[Civ. No. 95. First Appellate District.—January 26, 1906.]

## MILTON BERNARD, Respondent, v. DAVID L. SLOAN et al., Appellants.

ACTION FOR MONEY DUE TO COMMISSION AGENTS—ISSUES OF FRAUD AND BREACH OF CONTRACT—SUPPORT OF FINDINGS.—In an action by an assignee of commission agents to recover money due them on sales made for defendants under a contract, findings in favor of the plaintiff upon conflicting evidence on an issue as to fraudulent representations by such agents inducing the contract, and for want of evidence on an issue as to breach of the contract by them, are conclusive, and not open to review upon appeal.

ID.—CONSTRUCTION OF CONTRACT—AVOIDANCE FOR WANT OF IDENTICAL CONTRACTS—SUBSTANTIAL IDENTITY.—A provision of the contract that it was to be void if other identical contracts did not exist between the commission agents and other parties named is not to be interpreted as referring to contracts which were literally identical therewith, but to such as were substantially identical in matters pertaining to the purpose and terms of the contract.

ID.—ELECTION BY DEFENDANTS—WAIVER OF RESCISSION—ABSENCE OF NOTICE—CONTINUANCE OF CONTRACT.—In view of the fact that such provision was inserted at the instance of the defendants and for their benefit, the provision that it was to be void if the contracts were not identical was not intended to render the contract void *ipso facto* on that condition, but merely voidable at the election of the defendants, who might waive their right to avoid or rescind the contract, and did waive the same by failure to give prompt or any notice of rescission thereof after knowledge of the want of identity in the contracts, and by treating the contract after such knowledge as remaining in full force and effect.

ID.—DEFENSE OF RIGHT TO AVOID CONTRACT—FORFEITURE—BURDEN OF PROOF.—The defense set up by defendants in their answer as to

2 Cal. App.—47

their right to repudiate their contract for want of identity of the contract with the contracts held by their agents is in the nature of a forfeiture, and the burden is upon them to establish by evidence clear and satisfactory to the court that such contracts with other parties varied from that with them in some material and substantial respect.

ID.—SUPPORT OF FINDING AS TO SUBSTANTIAL IDENTITY.—The evidence reviewed and held to support a finding that such other contracts held by the agents were substantially identical with the contract sued upon and that defendants had failed to establish their defense for want of such identity.

ID.—ILLEGALITY OF CONTRACT—PRESUMPTION—PLEADING.—No presumption can be indulged that a contract which has no semblance of illegality in its terms is in violation of any law; and a party who would repudiate a contract on the ground of illegality must not only allege the facts constituting illegality, but, if the terms do not disclose its illegality must negative the existence of any facts or circumstances under which the contract could be held valid.

ID.—INSUFFICIENCY OF ANSWER—''SCHEME'' TO RESTRAIN TRADE.— An answer alleging that the commission agents ''devised a scheme'' to restrain trade and prevent competition, contrary to public policy, but which does not set forth the terms or character of the scheme from which the court could determine that such results would follow from its adoption, and alleges contracts with other parties and with the defendants in pursuance of a combination to prevent competition, but does not set forth the contracts, or state any facts from which the court can determine whether said contracts, or either of them, were unlawful, is not sufficient to present any defense of illegality of contract.

ID.—REFERENCE FOR ACCOUNTING—FINDINGS OF FACT BY REFEREE.— Upon a reference, by consent of the parties, to a referee to take an accounting, and report the testimony with his findings of fact therefrom, such findings were equivalent to a special verdict or the findings of fact made by the court on the trial of the case; and a review of his decision upon a question of fact is subject to the same rules as is the action of a jury in a special verdict, or of a court upon its finding of facts.

APPEAL from a judgment of the Superior Court of Santa Clara County, and from an order denying a new trial. A. L. Rhodes, Judge.

The facts are stated in the opinion of the court.

Joseph Hutchinson, for Appellants.

C. D. Wright, for Respondent.

HARRISON, P. J.—Action to recover money from the defendants under a contract executed by them.

In January, 1898, the defendants entered into a contract with the Braslan Seed Growers' Company of Chicago, by which they appointed the latter their selling agents for certain varieties of onion seed of the growth of the years 1896 and 1897. The Braslan Seed Growers' Company was a partnership, of which Charles P. Braslan was a member and the one who conducted the negotiations with the defendant and others, and gave his attention to the matter of the contract. Prior to the commencement of the present action the partnership assigned the contract and its interest therein to the plaintiff, but for convenience the name of Braslan is used herein as the equivalent of the partnership or of the plaintiff. The contract enumerated several different species or descriptions of seed, and opposite each kind was placed a cost price, together with an estimated amount of the seed covered by the contract, and also a selling price therefor. By its terms Braslan was to use his best endeavors to sell the seed at the earliest opportunity, and at as high a price as possible. For that purpose he was to place men on the road with the view of soliciting jobbers throughout the country, and all the expense thereof and other expenses incidental to selling the seed were to be borne by him. Both parties to the contract were to agree upon the prices to be quoted to dealers, and they were to keep each other posted as to prevailing conditions. The sales made by Braslan were to be reported to the defendants, who were then to ship the seeds and afterward receive the money therefor. The defendants agreed to give Braslan, as a commission on all sales made by him which they should accept, fifty per cent of the profits shown on the sales, above the cost price placed against the respective kinds of seeds. This commission was to be paid from time to time as the defendants should receive payments from the shipments made to the various purchasers. The contract also provided that the defendants might themselves make sales of said seeds with the same effect as if made by Braslan, and that any profits arising therefrom should inure to his benefit the same as if the sale had been made by him. Other provisions not necessary to be here recited were also contained therein. The contract bears date January 5, 1898, but it was

in fact executed January 7th.   After it had been signed, Braslan, at the same interview and at the instance of the defendants, wrote out in the form of a letter to them and signed the following, viz.: "Palo Alto, Cal., Jan. 7, 1898. D. L. Sloan & Son: Gents: It is understood and agreed by us that the contract entered into with you this day will become void if you find that identical contracts does not exist between us and the following: Agnew Bros., Charles Parker, Peter Schwall (with Trumbull & Beebe and us), Trumbull & Beebe, Frances Gallimore, W. H. Metson.   Yours truly, Braslan Seed Growers' Co. per Charles P. Braslan." (For matter of convenience the contract above referred to is hereinafter designated as "Exhibit A," and the above letter as "Exhibit B.")   The court found in effect that these two instruments were parts of the same transaction and together constituted the contract between Braslan and the defendants.

All the seed covered by the contract having been sold, the present action was commenced in July, 1900, to recover from the defendants the amount which Braslan was entitled to receive by virtue of the provisions of the contract, the form of the action being for money had and received to his use. To this complaint the defendants in their answer presented several distinct and separate defenses, their first defense being a denial of all the allegations in the complaint.   In their second defense they set forth the aforesaid exhibits A and B, alleging that the parties named in exhibit B were growers of onion seed, and had, prior to January 7, 1898, entered into contracts with Braslan for the sale of said seed; that these contracts were not identical with the one entered into by them with Braslan; that at the time of the execution of their contract, viz.: January 7, 1898, or at any other time, contracts identical with exhibit A did not exist between Braslan and the parties named in exhibit B or any of them, and that subsequent to said seventh day of January they discovered this fact; that the claim for which this action is brought is for moneys claimed to have been received by them under the terms of said exhibit A and not otherwise.   Their next defense is based upon a false representation made to them by Braslan as an inducement for them to enter into the contract, in which he claimed that identical contracts then existed between him and the parties named in exhibit

B. During the trial the answer was amended by adding another special defense, in which the defendants, after alleging the facts set forth in this defense, added the allegation that upon discovering that such identical contracts did not exist they thereupon and for that reason elected to and did declare said contract void, and notified Braslan to that effect. Their fourth defense is based upon other false representations claimed to have been made to them by Braslan, to the effect that he had a financial backing of $3,000,000 by the International Trust Company of Boston. Their fifth defense is that Braslan himself violated the contract by selling seed at less than the minimum price agreed upon. Other defenses made by them are that the contract between them and Braslan was against public policy, and therefore void.

At the trial the order of proof was varied from the usual course and before any evidence was offered on behalf of the plaintiff the validity of the contract set up by the defendants was submitted to the court for its decision, for the reason that if the court should hold that this contract was invalid there would be no occasion for an accounting. Inasmuch as in each of the above defenses there was included a denial of all the allegations of the complaint, there was no opportunity for a demurrer to the answer or to either of the several defenses therein; and when, after proving the execution of exhibits A and B, the defendants offered the same in evidence the plaintiff objected thereto on the ground that they were irrelevant and immaterial; that the answer does not set forth any defense to the plaintiff's claim, and therefore no testimony in support of its allegations is admissible. Upon the suggestion of the court, the sufficiency of this objection was thereupon directed to the special defenses in the form of a demurrer *ore tenus,* and, after considering the argument thereon, the court held that exhibits A and B were admissible in evidence as parts of the same contract; that proof that Braslan did not have identical contracts with the parties named in exhibit B would defeat the plaintiff's right of action; that proof of the alleged false representations as to the financial backing of Braslan would be an available defense to the action; that the defense of false representations as to identical contracts was defective in not alleging that the defendants were prevented from ascertaining that the repre-

sentations were false; that the defense that the contract was against public policy was insufficiently pleaded.

The trial of the cause was then proceeded with, and at its close the court held, that, by virtue of the provisions of exhibit B, the parties had agreed that exhibit A should become voidable if defendants should find that contracts identical with exhibit A did not at the date thereof, viz., January 7, 1898, exist between Braslan and the parties named in exhibit B; that defendants could at any day thereafter have ascertained by inquiry from said parties whether such contracts did exist; that they did not make any such inquiry until more than three months thereafter, and that that was an unreasonable delay therein; that contracts substantially identical with exhibit A did at that date exist between Braslan and said parties; that the defendants did not at any time notify Braslan that they elected or desired to terminate or rescind their contract with him, or treat the same as void or voidable, on the ground that such identical contracts did not exist; that the defendants did not at any time cancel said contract or the employment of Braslan thereunder; that the only notice relating to any rescission or repudiation of said contract, or of any desire to avoid or terminate the same, was a letter addressed to Braslan from New York, bearing date June 6, 1898, as follows: "Mr. Charles P. Braslan— Dear Sir: We have had doubts about the representations that were made in connection with the association you claim to be manager of, and, since coming east, those doubts have been more than confirmed, in consequence of which we deem it best to handle our own seed. Yours truly, D. L. Sloan & Son"; that Braslan did not represent to the defendants that his firm was financially backed in the sum of $3,000,000 or any other sum, by the International Trust Company of Boston; that the defendants did not ascertain that any representation made by him was false or untrue; that all the statements and representations made to them by him affecting, or that could affect, the contract (exhibits A and B), or the performance thereof, or the interest of the defendants thereunder, were true; that Braslan did not at any time violate the terms of his contract with the defendants; that under the provisions of the said contract with Braslan the defendants had received to his use the sum of $1,651.28, of which no part

had been paid. Judgment accordingly was thereupon rendered, a motion for a new trial was denied, and from that order and judgment the defendants have taken the present appeal.

The finding of the court upon the issues of fraudulent or false representations by Braslan as to his financial backing were made upon a direct conflict between the testimony of Sloan and Braslan, in which the court accepted the testimony of the latter as correct. Upon well-established principles, this finding is conclusive of the fact. There is no evidence in the record that Braslan had violated any of the terms of his contract with the defendants, and this finding is not open to review. The argument in behalf of the appellants is chiefly directed against the finding of the court that the provisions of exhibit B were satisfied if the contracts of Braslan with the several parties named therein were "substantially" identical with his contract with them; and they contend that, under the provisions therein, that if those contracts were not identical their contract with Braslan should become void, any variance therein defeated the plaintiff's right of recovery.

This provision is to be interpreted in view of the evident purpose of the parties in entering into the contract and the object of incorporating the provision therein. The object of the contract, as shown by its terms, was to effect a sale of the onion seed of the defendants upon terms that would be advantageous to both parties; and the provision regarding contracts between Braslan and other seed growers was shown to have been inserted at the instance of the defendants, and may reasonably be assumed to have been for the purpose of placing them upon as favorable a footing as the others in the disposition of their seed. It is not to be assumed that it was their intention that Braslan might treat the contract as void against their will, upon his merely showing that his contracts with the others were not identical with that with them; or that they should not be at liberty to enforce their contract against him if they should so desire, notwithstanding any variance between it and the other contracts. This provision would not have the effect to make the contract void in the extreme sense or *ipso facto* void by reason of such want of identity, but merely voidable at the election of the defend-

ants.  The language of the provision, viz.: "The contract entered into with you this day will become void if you find that identical contracts do not exist" indicates that this was the intention of the parties, and that they contemplated not only a future investigation in reference thereto by the defendants, but also that, until the defendants should find upon such investigation that the other contracts were not identical with theirs, the contract between them and Braslan would not be affected.  But, as above stated, the mere ascertainment of such want of identity would not vitiate their contract or render its provisions null.  The provision having been inserted for their benefit, its observance could be waived by them, and they still be at liberty to insist upon the performance of the contract on the part of Braslan.  The contract being, therefore, voidable on this ground, only at their election, it was incumbent upon them, as soon as they ascertained the facts upon which they could exercise such election, to determine whether they would abide by its terms or treat it as null; and, if they should elect the latter course, immediately thereon notify Braslan of such election; otherwise he would have the right to proceed with it according to its terms.  Upon the ascertainment of facts showing that the consideration on which they had entered into the contract, or any part thereof, had failed they could elect to rescind the contract; and, under the rules governing rescission, such election and notice thereof should be given promptly.  (Civ. Code, sec. 1691.)  Instead of doing so, no notice of their election to rescind the contract on this ground was ever given by them.  Mr. Sloan testified that he had an interview with Mr. Wright in April, 1898, in which he was informed by him that the contract of Braslan with Schwall was entirely different from the one held by the defendants, and that upon that interview he determined to rescind his contract with Braslan; that from that time he felt at liberty to repudiate the contract at any time; and that he was not under any obligation or bound by it.  He did not, however, manifest his election or claim to have given any notice thereof prior to June 6, 1898, when he wrote the above letter to Braslan, and in this letter he made no reference to this ground for a rescission.  Meanwhile he had visited Braslan in Chicago; conferred with him in reference to the contract, accepted from him orders for

the sale of the seed to various purchasers, and in other re-
spects acted with him upon the theory that the contract
was still in force.   By thus treating the contract as a vital
obligation and acting under its provisions he waived all right
to rescind it upon the ground of having discovered that the
contracts were not identical.

The finding of the court that the other contracts of
Braslan were substantially identical with that of the de-
fendants, is equivalent to a finding that they were identical
in all matters of substance.   The meaning of the word "iden-
tical" as here used is to be determined by the context and by
the apparent purpose for which it is used.   Manifestly, it
was not the intention of the parties that those other con-
tracts should be identical in date, or in the names of the
parties, or in the amount or description of the seed con-
tracted for, but identical merely in matters pertaining to
the purpose of the contract and in the terms upon which it
was entered into.

It is contended, however, by the defendants, that this find-
ing is not sustained by the evidence.   In considering this ex-
ception to the finding it must be borne in mind that the de-
fense to the plaintiff's right of action here relied upon—
the right to repudiate their contract upon the ground set
forth in this portion of their answer—is a matter to be af-
firmatively shown by the defendants; that it is in the nature
of a forfeiture, and that it was incumbent upon them to
establish, by evidence clear and satisfactory to the court,
that the contracts of Braslan with the other parties varied
from that with them in some material and substantial respect.
The contracts with Parker, Gallimore, Metson, Agnew, and
the defendants were in evidence before the court, and in all
substantial respects are identical.   The character of the others
was shown by secondary evidence.   Mr. Braslan testified that
they were all identical; that their form was first dictated to a
stenographer and that the several contracts were then type-
written from his notes.   From the appearance of those in the
record it is evident that blank spaces were left in the form
for the names of the parties, the date of execution and the
amount and description of seed to be covered by the several
instruments.   The contract with Schwall related to seed of
the growth of 1897 only.   Mr. Schwall testified that it was

executed at the Baldwin Hotel in January, 1898; that Mr. Braslan and Mr. Wright, his attorney, were present; that he left the management of the transaction to his attorney; that he [Mr. Wright] handed the contract to him and said that it was correct; that he depended upon his attorney and signed it; that he did not read it and did not remember its terms; that he gave it to Mr. Wright after he had signed it and had not seen it since. He was shown the contract with the defendants, and after saying, "I don't know the contents of the contract we had," was asked if he ever entered into a contract with Braslan on similar terms, and replied, "I don't remember that I have." The defendant D. L. Sloan testified that in April, 1898, at the direction of Mr. Schwall, he called upon Mr. Wright for the purpose of seeing the contract; that he did not know whether he had his own contract with him at that time, and could not say whether he showed it to Mr. Wright; that he was told by Mr. Wright that the contract with Schwall had been mislaid and that it was not like his contract at all and that in Schwall's contract Braslan had only an option. This testimony of what Wright told him was merely hearsay, and not entitled to any consideration in determining the character of the Schwall contract. Mr. Wright, however, testified that he never made any such statement to Sloan. The fact that Mr. Braslan did not remember that a contract was made by him with Schwall, or thought that the contract with Schwall was the same as that with Trumbull & Beebe, did not overcome the positive testimony of both Schwall and Wright that such contract was made. Mr. Beebe, of the firm of Trumbull & Beebe, was called as a witness on behalf of the defendants, and testified that the contract with Trumbull & Beebe related to the seed of the growth of 1896 only, but he was unable to say whether it was like the contract of the defendants; and there was no evidence that it differed therefrom in any respect. "Agnew Bros." consisted of J. P. Agnew and H. C. Agnew. They were not associated in business in 1898, but each of them was engaged in growing onion seed for his own account in Santa Clara county. At that time J. B. Agnew had sold all of the seed that he had grown and had no seed for sale, and made no contract on his own account with Braslan. He met Braslan at the Baldwin Hotel in San Francisco, and negotiated

with him, in behalf of his brother, H. C. Agnew, in reference to the sale of his brother's onion seed. As the result of this negotiation a contract bearing date January 4, 1898, was prepared for execution by H. C. Agnew, and was taken to San Jose by J. B. Agnew to be executed by his brother, and in a few days was returned to Braslan with an interlineation made by or at the instance of H. C. Agnew. This contract was introduced in evidence, and, except in the description and quantity of seed, is identical with that of the defendants. The lettuce seed therein contracted for is not of the same description as that contracted for by the defendants. It contains, however, a clause providing that it shall terminate August 1, 1898, or whenever the seed therein named should be sold, if sold before that date. With reference to this clause, Mr. Braslan testified that it was inserted after it had been taken from him and before it was returned, and that in the meantime the contract with the defendants had been executed. There was no evidence that this change in the instrument was assented to by Braslan, and in the absence of clear testimony to that effect the court was at liberty to find that he had not so assented. The fact that the contract was entered into with H. C. Agnew instead of Agnew Bros. was insufficient to prevent it from being identical with the contract of the defendants in all matters of substance. It was as efficient for all the purposes of the defendants as if it had been made with both of the Agnews. J. B. Agnew had no seed; and if the contract had been executed by both of them it would not have changed its subject matter or character, or embraced any seed other than that described therein, or affected the result which the defendants sought to obtain by means of their contract with Braslan. None of the contracts purport to cover all of the seed held by the parties thereto; and it was shown that H. C. Agnew and Trumbull & Beebe had other seed than that covered by their contracts. Whether the defendants had other seed than that covered by their contract is uncertain, the defendant J. E. Sloan having testified at one time during the trial that they did, and at another time that they did not. It must be held, therefore, that the foregoing finding of the court was sustained by the evidence, and that the defendants failed to establish their defense to

the plaintiff's cause of action upon the ground herein discussed.

The claim of the defendants that their contract with Braslan is illegal, by reason of being in restraint of trade and against public policy, is not pleaded in their answer in such a mode as to present such defense. Parties are allowed great latitude and freedom of action in making contracts with each other, and no presumption can be indulged that a contract which has no semblance of illegality in its terms is violative of any law. Especially must a party who would upon this ground repudiate a contract into which he has entered, and which has been fully executed by the other party, make his right to such defense manifest, not only by alleging the facts constituting its illegality, but also, if its terms do not disclose its illegality, by negativing the existence of any facts or circumstances under which the contract could be held valid. In the present case this defense is set forth in the answer in four forms, each of which is pleaded as a defense to the complaint separate and distinct from all the others. It was therefore essential that each shall be complete in itself, and either by direct allegations therein, or by proper reference to other portions of the answer, set forth facts sufficient to show such defense. The reference by the defendants to certain paragraphs in other portions of their answer has the same effect as if those paragraphs had been repeated in each of these defenses, and the sufficiency of each of the defenses is to be measured as if so repeated and set forth therein. In those portions of the answer, which are thus incorporated by reference, the defendants allege that in January, 1898, they and certain other parties (naming them) were engaged in raising onion seed in the Santa Clara valley and elsewhere in the state of California and in the United States, and had on hand the greater portion of such seed of the crops of 1896 and 1897; that such seed raised in the Santa Clara valley is of a peculiar quality, and in great demand by the farmers of California and elsewhere in the United States, and cannot be obtained of the same quality elsewhere, and that the farmers then depended upon the seed so raised for the supply of seeds of the growth of those years; that at the time Braslan devised a scheme to control the sale and purchase of all of said onion seed for the purpose of increasing the price

thereof and of limiting the number of dealers from whom such seed could be obtained, and compelling said farmers to purchase said seed from him or only at prices controlled by him; that said seed growers (naming them) other than the defendants entered into said scheme, and in pursuance thereof, and for the purpose of enabling Braslan to accomplish the objects above set forth, made contracts with him, under and by which he was given control of all their product of onion seed of the growth of 1896 and 1897 and of the prices thereof. The further averments in support of this defense to the plaintiff's cause of action are set forth in four separate forms; but without considering each of these forms as disconnected with the others, and combining their several allegations as if pleaded in the same defense, it is alleged, in addition to the matters incorporated by reference, that the purpose of "said scheme" and the sole and only purpose and consideration on the part of Braslan in obtaining from the defendants "said contract" was to form a combination as aforesaid so as to enable him to control said onion seed, and secure for him exclusive control thereof, remove all competition among the owners thereof, prevent competition in the sale thereof, fix and raise prices therefor, and compel parties who might require said seed to purchase the same from him, or at prices controlled and fixed by him, and to pay therefor such prices as he might demand and such as would be in excess of their real value; that "said contract" is an agreement restraining trade, and is unlawful and void; that "said contract" is against public policy and is illegal and void in this, viz., that the only purpose and consideration therefor on the part of Braslan was to form a combination among the said seed growers for the purpose of limiting the amount of seed put into the market, controlling the prices thereof, and raising the price to a figure unnaturally high, and giving to him control of the same.

The defendants have thus alleged that Braslan "devised a scheme" for the purpose of accomplishing certain results claimed to be contrary to public policy; but they have not set forth the terms or character of the scheme, from which the court could determine that such results would follow from its adoption, and have only asked the court to accept their opinion of its effect as the basis of its judgment. They have

also alleged that certain seed growers, who had under their control the greater portion of the seed which was raised in the Santa Clara valley, "entered into said scheme," and, for the purpose of enabling Braslan to accomplish said purposes. "made contracts" with him, by which he was given all control of their seed "and of the price thereof"; but they have not set forth these contracts, or alleged their character, or stated any fact in reference thereto from which the court could determine whether said contracts or either of them were unlawful. For all that appears from their allegations their contracts with Braslan may have been for the direct sale of their seed to him. It would violate no rule of law for him to purchase from the different owners thereof all of their seed; and after such purchase he would be entitled to sell as much or little of it as he chose, and at such price as he might fix. There is, moreover, no allegation in this defense, either directly or by way of reference, that the defendants entered into any contract with Braslan, or were in any way connected with the scheme devised by him. They have alleged that the only purpose on the part of Braslan "in obtaining from defendants said contract" was to form a combination to control the seed and to prevent competition in the sale thereof; but the contract thus referred to is not set forth, nor do they allege that Braslan obtained any contract from them. Unless it be alleged that the defendants entered into a contract with Braslan, and the terms of such contract are set forth, the court could not determine whether any contract between them was lawful or unlawful or against public policy, and the scheme or purpose of Braslan in entering into contracts with others became immaterial.

Upon the consent of the parties, the court appointed a referee "to examine the books of account of the defendants, and take such other testimony, oral or documentary, as may be offered by the parties thereto, and report such testimony to the court, together with his findings of fact therefrom as to the state of account between plaintiff and defendants"; and in pursuance thereof the referee made his report to the court in accordance with the directions given him. Upon the coming in of this report the defendants made certain objections thereto, and the court thereupon sent it back to the referee with directions to take further testimony. Upon the coming

in of his second report the defendants renewed their objections and made others, some of which were allowed and others overruled by the court. It is now urged that the court erred in thus overruling the objections made by the defendants. The finding of facts reported by the referee was equivalent to a special verdict (Code Civ. Proc., sec. 645), or the findings of fact made by the court upon its trial of a cause; and a review of his decision upon a question of fact is subject to the same rules as is the action of a jury in a special verdict, or of a court upon its finding of facts. The weight of evidence, the resolution of any conflict in the evidence, the credibility of the witnesses, the character of their testimony, are matters upon which he is required to exercise his judgment and wherein his judgment will be accepted by the court as correct, unless clearly shown to be erroneous. In the present case the referee was called upon to examine the books of account kept by the defendants, including the completeness of the entries therein and the manner in which they had been kept. From this examination he ascertained the amount of the commissions to which plaintiff was entitled as disclosed thereby. Oral testimony was also given by the defendant J. E. Sloan, consisting chiefly of his recollection of transactions that had taken place four years before, or of some inference or conjecture therefrom. The referee states in his report that "this testimony is not based upon any written evidence or record, either in the books, or outside of them, and is admitted to be solely a matter of memory." In considering it (which was manifestly given for the purpose of showing that the books were imperfect and incomplete and did not contain full entries of the several transactions) the referee had an opportunity to observe his manner of testifying, the clearness or hesitancy with which he was able to exercise his memory, and to determine whether he was entitled to credit or should be disbelieved. The contradictory statements of the witness above referred to respecting the amount of seed covered by their contract indicated that his memory was not at all times infallible. After hearing the testimony, and giving it due consideration, the referee reported to the court that in his opinion it was of insufficient weight to change the findings which he had first made. The court, after argument upon the exceptions to these findings, at which it must be as-

sumed that the referee, in accordance with his directions, had reported all the testimony taken by him, and after due consideration by it of the evidence in their support, declined to set aside his findings of fact; and we cannot say that the appellants have shown that in so doing the court committed error.

The judgment and order are affirmed.

Cooper, J., and Hall, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on February 24, 1906, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 27, 1906.